1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA,

8                          Plaintiff,        NO:  2:14-CR-179-RMP

9          v.                                ORDER DENYING DEFENDANT'S
                                             MOTION TO DISMISS AND
10  HARRY ANTHONY WILLIAMS (1)               DEFENDANT'S MOTION TO
    and DERRICK BOGGESS (2),                 SUPPRESS

11
                           Defendants.
12

13        BEFORE THE COURT are two motions filed by Defendant Williams:  a

14  Motion to Dismiss, **ECF No. 39**, and a Motion to Suppress Blood Test Results,

15  **ECF No. 42**.  The Court heard oral argument on the motions on March 18, 2015.

16  Christian J. Phelps appeared on behalf of Defendant Harry Anthony Williams, who

17  was also present.  Assistant Federal Public Defender Amy H. Rubin appeared on

18  behalf of Defendant Derrick Boggess, who was present.  Assistant United States

19  Attorney Caitlin A. Baunsgard represented the United States.  The Court has

20

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 1

1  reviewed both motions and all relevant filings, has considered the parties'

2  arguments, and is fully informed.

3                              **BACKGROUND**

4         A federal grand jury indicted Defendants Williams and Boggess on

5  December 17, 2014, for one count each of involuntary manslaughter, for the death

6  of Defendant Boggess's three-year-old daughter.  ECF No. 1.  The United States

7  alleges that, on April 22, 2014, Defendant Williams drove a vehicle while under

8  the influence of alcohol and drugs, with Defendant Boggess and his daughter in the

9  car as passengers.  ECF No. 1 at 1-2.  Defendant Williams allegedly drove the van

10 "off the roadway, over an embankment."  ECF No. 46-1 at 1.  Defendant

11 Boggess's daughter was not wearing a seatbelt, and she died at the scene.  ECF No.

12 46 a 2.

13        The United States alleges that, when questioned at the scene, Defendant

14 Williams admitted to having consumed one Four-Loko, a beverage containing

15 alcohol and caffeine.  ECF No. 46 at 2.  Additionally, officers represent that they

16 smelled "the strong odor of intoxicants" on Defendant Williams.  ECF No. 46 at 2-

17 3.  Thereafter, officers obtained a tribal search warrant to retrieve a blood sample

18 from Defendant Williams.  ECF No. 42-1.  Tests conducted on the blood sample

19 showed that Defendant Williams had a blood alcohol content of 0.036, and that he

20

1  had barbiturates, methamphetamines, and cannabinoids in his system.  ECF No. 46

2  at 3.

3          Seven months prior to the federal indictment and one week after the

4  accident, based on these same events, the Colville Confederated Tribes charged

5  Defendant Williams with one count of vehicular homicide, and two counts of

6  vehicular assault.  ECF No. 46-1.  Defendant Williams pleaded guilty to all three

7  counts and was sentenced to 350 days per count to be served consecutively.  ECF

8  No. 46-5.

9          Defendant Williams now challenges this federal prosecution on the basis of

10 double jeopardy and violation of the Department of Justice's internal *Petite* Policy.

11 ECF No. 39.  He also moves to suppress the blood test results on the basis that the

12 search warrant used to obtain his blood sample did not explicitly authorize testing

13 of the blood.  ECF No. 42.

## DISCUSSION

**A.    Motion to Dismiss**

16        Defendant Williams argues that this federal prosecution violates the

17 Department of Justice's internal *Petite* Policy, which bars a federal prosecution

18 based on the same act or acts that supported a state or federal prosecution that was

19 adjudicated on the merits.  ECF No. 39; U.S.A.M. § 9-2.031.  Defendant Williams

20 also appears to be arguing that this prosecution violates the Double Jeopardy

Clause of the Fifth Amendment.  *See* ECF No. 39 at 2, 13 (citing U.S. Const. amend. V).

Additionally, Defendant Williams argues that he is the victim of selective prosecution, contending that the United States is prosecuting him based on events for which he already has been prosecuted in tribal court, but that the Government does not similarly prosecute non-Indian defendants based on events for which they already have been prosecuted in state court.  ECF No. 39 at 18-21.  Defendant Williams moves the Court to dismiss the federal indictment in this case, or alternatively, to exclude any statements that he made in connection with his prosecution in tribal court and to require the Government to produce discovery regarding his selective prosecution claim.

The United States responds that the *Petite* policy only applies to prior state or federal prosecutions, not tribal prosecutions, ECF No. 46 at 7, that this prosecution does not violate the Double Jeopardy Clause and is consistent with Ninth Circuit and U.S. Supreme Court precedent, ECF No. 46 at 9, and that Mr. Williams has not presented any evidence of selective prosecution in this case, ECF No. 46 at 9-10.  The United States also argues that Mr. Williams's statements made in connection with his tribal court prosecution are admissible as admissions by a party opponent and statements against interest under Federal Rules of Evidence 801(d)(2)(A) and 804(b)(3).

i.      *The Petite Policy and the Double Jeopardy Clause*

The United States Attorneys' Manual "establishes guidelines for the exercise of discretion by appropriate officers . . . in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding." U.S.A.M. § 9-2.031.  The policy, termed the "*Petite* Policy," is an internal Department of Justice policy that bars successive federal prosecutions based on the same or similar acts involved in a prior state or federal prosecution unless three conditions are satisfied:  (1) the matter involves a substantial federal interest, (2) the prior prosecution left that interest "demonstrably unvindicated," and (3) the government believes that the defendant's conduct constitutes a federal offense, and that evidence "probably will be sufficient to obtain and sustain a conviction . . . ." U.S.A.M. § 9-2.031(A).  The policy makes no mention of tribal court convictions.  Thus, the plain language of the policy only applies to prior state or federal prosecutions, not to prior tribal prosecutions.

As another Court in this district previously held:

> On its face, the *Petite* policy applies to federal prosecutions that follow state prosecutions.  Mr. Flett argues the *Petite* policy also applies to federal prosecutions that follow tribal prosecutions.  Mr. Flett's reliance upon the *Petite* policy is misplaced.  As the United States notes, the *Petite* policy does not confer substantive rights upon Mr. Flett.  *See United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979).  Mr. Flett may not raise the *Petite* policy as a shield to the dual sovereignty doctrine.  Since the Colville Confederated Tribes and the United States are separate sovereigns, the federal prosecution does not

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 5

violate the Double Jeopardy Clause despite the fact it arises from the same events that gave rise to the prior tribal prosecution.

Order Re: Pretrial Motions, *United States v. Tommie Joe Flett*, No. 2:12-CR-00132-FVS-1 (E.D. Wa. Apr. 23, 2013), ECF No. 58 at 3.

Additionally, the Ninth Circuit has held that a criminal defendant may not invoke the *Petite* Policy to obtain dismissal of a federal indictment. *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979) ("Assuming arguendo that the second prosecution violates the Petite policy, we conclude that such a violation of the internal housekeeping rules of the Department of Justice does not entitle Snell to dismissal of the indictment.").

Finally, the Supreme Court has held that the federal prosecution of an Indian based on the same underlying facts on which he was convicted in tribal court does not violate the Double Jeopardy Clause. *United States v. Lara*, 541 U.S. 193, 199, 210 (2004). In *Lara*, the Court considered *Heath v. Alabama*, 474 U.S. 82, 88-89 (1985), which held that, under the dual sovereignty doctrine, multiple prosecutions are permissible when they are carried out by separate sovereigns. *Heath*, 474 U.S. at 88-89. In *Heath*, the Court noted that "the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns." *Id.* at 88. Thereafter, the *Lara* Court concluded that tribal courts have "inherent tribal sovereignty," rather than "delegated federal authority," to prosecute crimes committed by Indians, and thus

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 6

qualify as distinct sovereigns from the federal government. *Lara*, 541 U.S. at 199, 210. Therefore, multiple prosecutions in tribal and federal court do not violate double jeopardy, because tribal courts are separate sovereigns from the federal government.

Based on the plain language of the policy, and Ninth Circuit and Supreme Court precedent, the federal indictment in this case violates neither the *Petite* Policy nor the Double Jeopardy Clause of the United States Constitution.

ii.    *Selective Prosecution*

In order to raise a selective prosecution claim, a claimant must first demonstrate a prima facie case that a "federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To establish a discriminatory effect, the claimant must show that similarly situated individuals of a different class were not prosecuted. *Id.*

In order to obtain discovery on a selective prosecution claim, the defendant must meet a "rigorous standard" to make "a credible showing of different treatment of similarly situated persons . . . ." *United States v. Armstrong*, 517 U.S. 456, 470 (1996). In other words, to obtain discovery, a claimant must produce "some evidence tending to show the existence of the essential elements of a

1    selective prosecution claim." *Id.* (quoting *United States v. Berrios*, 501 F.2d 1207,

2    1211 (2d Cir. 1974)) (internal quotation marks omitted).

3         Defendant Williams makes several unsupported claims that "[c]ases arising

4    from Indian Reservations, however, routinely receive disparate treatment," and that

5    "[f]ederal prosecutions are frequently brought after a defendant has already been

6    convicted in tribal court."  ECF No. 39 at 19.  However, none of Defendant

7    Williams's claims are supported by evidence, nor does Defendant Williams

8    provide any evidence that similarly situated individuals prosecuted in state court

9    were not later prosecuted in federal court.

10        Defendant Williams requests the Court to order discovery on this issue, but

11   provides no evidentiary support for his allegation that the "common practice" in

12   this district is selective prosecution.  *See* ECF No. 39 at 21-22.  He has not

13   provided any "evidence tending to show the existence of the essential elements of a

14   selective prosecution claim."  *Armstrong*, 517 U.S. at 470.  Although the Court

15   recognizes that defendants are at a disadvantage to produce evidence of disparate

16   treatment without the benefit of having discovery, without more, the Court has no

17   basis on which to grant discovery on this issue.

18        iii.    *Admission of Prior Statements*

19        Defendant provides no legal basis on which to exclude Defendant

20   Williams's prior statements made during his tribal court prosecution.  The

1    statements are admissible hearsay as his prior admissions, pursuant to Federal Rule

2    of Evidence 801(d)(2)(A), provided that they satisfy all other Federal Rules of

3    Evidence.  However, the Court will exclude evidence of Mr. Williams' prior guilty

4    plea under Federal Rule of Evidence 403, as being unfairly prejudicial and likely to

5    confuse the trier of fact.

6        Therefore, Defendant Williams' Motion to Dismiss, ECF No. 39, is denied

7    in part and granted in part.

8    **B.    Motion to Suppress**

9        The Fourth Amendment protects people against unreasonable searches and

10    seizures.  *Katz v. United States*, 389 U.S. 347, 353 (1967).  Federal Rule of

11    Criminal Procedure 41(d)(1) provides that a warrant must issue if there is probable

12    cause to search for and seize evidence of a crime.  Subject to a few specific and

13    well-delineated exceptions, warrantless searches are per se unreasonable.  *Id.* at

14    357.

15        "In order for a search to be reasonable, the warrant must be specific."  *In re*

16    *Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991).

17    To decide whether a warrant lacks sufficient specificity, the Court examines the

18    warrant's particularity and its breadth.  *United States v. Kow*, 58 F.3d 423, 426 (9th

19    Cir. 1995).  "Particularity is the requirement that the warrant must clearly state

20    what is sought.  Breadth deals with the requirement that the scope of the warrant be

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 9

limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas*, 926 F.2d at 856-57 (internal citations omitted).

The requirement of particularity means that "the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize." *Id.* at 857. "However, the level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought." *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006).

In arguing that the results of Mr. Williams's blood test should be suppressed, Defendant Williams is arguing that the search warrant lacked particularity because it did not explicitly authorize testing the blood for drugs and alcohol, as opposed to just its collection. ECF No. 42. Mr. Williams adopts the rationale of a recent Washington Appellate Court case, *State v. Martines,* 182 Wn.App. 519 (Wash. Ct. App. 2014), *petition for review granted*, No. 90926-1 (Wash. Dec. 3, 2014), holding that the testing of blood is a second search subsequent to the actual taking of the blood.

In *Martines,* the court of appeals relied on *Skinner v. Ry. Labor Exec's Ass'n,* 489 U.S. 616 (1989) and *Robinson v City of Seattle,* 102 Wn.App. 795 (2000), both cases involving collection and testing of urine in employment situations. *Martines,* 182 Wn.App. at 528. The *Martines* court concluded:

> [T]he testing of blood intrudes upon a privacy interest that is distinct
> from the privacy interests in bodily integrity and personal security that

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 10

are invaded by a physical penetration of the skin.  It follows that the testing of blood is itself a search, and we so hold.

Because the testing of blood is a search, a warrant is required. . . .

*Id.* at 530.

In this case, as in *Martines,* Mr. Williams does not contend that the warrant failed to establish probable cause that an examination of his blood sample would reveal that he was under the influence of alcohol or drugs.  *See* ECF No. 42. Instead, Mr. Williams argues that the blood test was an unreasonable search under the Fourth Amendment because the warrant did not expressly authorize the test. Nor did the officer "articulate that he expected to find evidence of intoxication in the blood of the defendant, or that he expected to find evidence in support of the crime of vehicular homicide in the defendant's blood," in the search warrant affidavit.  ECF No. 42 at 2.

Mr. Williams also cites to *Skinner v. Ry. Labor Exec's. Ass'n*, 489 U.S. 602 (1989), in which the Supreme Court discussed the "compelled intrusion into the body for blood to be analyzed for alcohol content," and stated that "it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable.  The ensuing chemical analysis of the sample to obtain physiological data is a further invasion . . . ."  *Skinner*, 489 U.S. at 616.

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 11

The Government relies on a 2010 Eighth Circuit case that concluded, based on *Schmerber v. California,* 384 U.S. 757 (1966), and *United States v. Snyder,* 852 F.2d 471 (9th Cir. 1988), that "the taking and later analysis of the blood are 'a single event for fourth amendment purposes.'" *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).

In *Schmerber*, the Supreme Court authorized the collection and testing of a blood sample without a warrant based on exigent circumstances, because the level of alcohol in the blood could diminish rapidly over time. *Schmerber*, 384 U.S. at 770-71. Similarly, in *Snyder*, the Ninth Circuit considered a challenge to blood tests conducted on a blood sample that was seized under the exigent circumstances doctrine. *Snyder*, 852 F.2d at 473. The Ninth Circuit rejected the defendant's argument that the collection and testing of blood constituted two separate searches, because such a rule would mean that "the results of the blood test in *Schmerber* would have been excluded because no exigent circumstances remained by the time the test was actually conducted." *Snyder*, 852 F.2d at 473.

Instead, the *Snyder* court noted that "[t]he only justification for the seizure of defendant's blood was the need to obtain evidence of alcohol content. The Court therefore necessarily viewed the right to seize the blood as encompassing the right to conduct a blood-alcohol test at some later time." *Id.* at 474. The Ninth Circuit concluded that "under *Schmerber*, so long as blood is extracted incident to a valid

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 12

1    arrest based on probable cause to believe that the suspect was driving under the

2    influence of alcohol, the subsequent performance of a blood-alcohol test has no

3    independence significance for fourth amendment purposes . . . ." *Id.*  In other

4    words, the Ninth Circuit accepted at that time that the collecting and subsequent

5    testing of blood are not two separate searches under the Fourth Amendment.

6          However, the Court notes that *Schmerber* was decided in 1966 and *Snyder*

7    was decided in 1988.  Both cases were decided several decades ago, well before

8    scientists had made many of the technological and genetic testing advances that are

9    commonplace in today's society.  The United States argues that a search warrant

10    authorizing the blood test and restricting the type of testing authorized is not

11    needed, because the labs that the United States uses are not sophisticated and the

12    Government only ordered Mr. Williams' blood to be tested for alcohol and drugs.

13          The Court is not persuaded by either of these arguments in 2015, when DNA

14    can be tested by many labs and a person's entire genome can be mapped at a

15    minimal cost[1].  Assuming that the Government or the lab stores Mr. Williams'

16    blood properly for a period of time, it is conceivable that additional and more

17    intrusive testing could be conducted that reveals even more intimate information

18    such as the presence of certain diseases or exposure to certain substances.  It is

19    exactly these types of intrusions that require authorization through the issuance of

20    _____

[1]  A quick search on the internet reveals DNA tests and mapping for $99.

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~
13

a search warrant by a neutral judicial officer.  Although federal law does not expressly require a warrant for blood testing at this time, the Court is confident that it should.

However, even if the search warrant should have included explicit authorization to test Mr. Williams's blood sample, exclusion would not be an appropriate remedy under the current status of the law.  Violations of the Fourth Amendment may result in the suppression of seized evidence.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  However, "in the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984).  When police conduct "involves only simple, isolated negligence, the deterrence rational loses much of its force, and exclusion cannot pay its way." *Davis v. United States*, 131 S.Ct. 2419, 2427-28 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 137 (2009)) (internal quotation marks omitted).

Defendant has not proffered any evidence that officers were "dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926. Instead, there was sufficient evidence establishing probable cause to find that

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 14

1  Defendant's blood would show that he was under the influence of alcohol or drugs.

2  There is no evidence that the officers' omission from the search warrant affidavit

3  of their intent to test Mr. Williams' blood was anything more than an act of

4  "simple, isolated negligence," *Davis*, 131 S.Ct. at 2427-28, for which the

5  exclusionary rule is an inappropriate remedy.  Therefore, Defendant's Motion to

6  Suppress, ECF No. 42, is denied.

7       Accordingly, **IT IS HEREBY ORDERED**:

8       1.  Defendant Williams's Motion to Dismiss, **ECF No. 39**, is **DENIED**.

9       2.  Defendant Williams's Motion to Suppress Blood Test Results, **ECF No.**

10      **42**, is **DENIED.**

11      The District Court Clerk is directed to enter this Order and provide copies to

12  counsel.

13      **DATED** this 31st day of March 2015.

14

15                    *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON
16                    Chief United States District Court Judge

17

18

19

20

ORDER DENYING MOTION TO DISMISS AND MOTION TO SUPPRESS ~ 15